**CASTLE COAL & OIL COMPANY, INC., Petitioner,**

v.

**Robert B. REICH, Secretary of Labor, United States Department of Labor, Respondent.**

**No. 991, Docket 94–4125.**

United States Court of Appeals, Second Circuit.

Argued Jan. 9, 1995.

Decided April 26, 1995.

---

Peter D. Conrad, New York City (Proskauer Rose Goetz & Mendelsohn, of counsel), for petitioner.

Bruce Justh, Asst. Counsel for Appellate Litigation, U.S. Dept. of Labor, Washington, DC (Thomas S. Williamson, Jr., Sol. of Labor, Joseph M. Woodward, Associate Sol. for Occupational Safety and Health, Ann Rosenthal, Counsel for Appellate Litigation, U.S. Dept. of Labor), for respondent.

Before: KEARSE, McLAUGHLIN and PARKER, Circuit Judges.

PARKER, Circuit Judge:

The issue presented in this petition for review is whether the Secretary of Labor properly found that Castle Coal & Oil Company, Inc. discharged Ralph Clay in violation of § 405(a) and § 405(b) of the Surface Transportation Assistance Act, 49 U.S.C. app. § 2305 (1988). For the following reasons, we grant the petition and set aside the Secretary's Decision and Order of Remand of November 12, 1991 and Final Decision and Order of June 3, 1994, and direct the Secretary to adopt the ALJ's July 18, 1991 Decision and Order dismissing the complaint in its entirety.

*Facts*

### A. Background

Castle Coal & Oil Company, Inc. ("Castle") operates commercial motor vehicles to transport cargo and to deliver oil to customers. Castle employed Ralph Clay as an oil delivery truck driver for nearly eight years. In January and February of 1990, Clay was making residential deliveries in the Borough of Manhattan. Due to objections Clay had to a truck he had previously been driving, he began driving truck # 185 in mid-January 1990. Truck # 185 had its primary delivery hose mounted on the right side of the truck rather than the rear of the truck. This meant that when deliveries were made to houses on the left side of a one way street the driver had to park to the left, stand in the road and unwind sufficient hose from the reel to pass it under the truck. Although truck # 185 also had a delivery hose mounted on the rear of the truck, it was only suitable for making commercial and industrial deliveries.

On February 1, 1990, Clay was permanently assigned truck # 185. On the same day, Clay expressed safety concerns in his Driver's Daily Report about making deliveries to the left hand side of one way streets from a vehicle with a right hand reel. Specifically, he stated: "I feel that these side reel trucks are dangerous for the driver. The Driver (sic) is out in traffic too often.... When he is trying to push hose under truck (sic) it is hard for other drivers to see him." At that time, he had completed at least 13 left side deliveries on one way streets with truck # 185. On February 2nd and 3rd, Clay completed two more deliveries of this kind. On February 3rd, he noted in his daily report that he had been told there might be a law against such deliveries. At that point, Castle investigated the allegations, found no such law and determined that the procedure was not hazardous. Clay forwarded his complaints to the Occupational Safety and Health Administration ("OSHA") on February 2, 1990. OSHA responded on May 2, 1990, in a letter to Clay, indicating that it found no violation in the procedure.

On February 7, 1990, after completing 11 more left hand deliveries, Clay stated in his daily report that as of February 8, 1990, he would no longer make deliveries when the reel was not on the same side of the street as the delivery. On February 9, 1990, Clay's schedule included two such deliveries. Clay did not even attempt delivery at either location. On February 13, 1990, Castle met with Clay's union to discuss the situation. Clay continued to refuse to consider making any such deliveries and was discharged on February 13.

### B. Prior Proceedings

On March 14, 1990, Ralph Clay filed a discrimination complaint with OSHA, pursuant to § 405 of the Surface Transportation Assistance Act of 1982 ("STAA"), 49 U.S.C. app. § 2305. Clay alleged that he was discharged by Castle because he made safety complaints to management and because he had refused to work under hazardous conditions, both activities protected by the STAA. On March 16, 1990 Clay's union filed a formal grievance in support of Clay's complaint.

On May 22, 1990, an arbitrator appointed by the New York State Mediation Board found that Clay had been discharged for just cause and denied the grievance filed by his union. On July 12, 1990, OSHA's Regional Administrator found that Clay had not been discharged because of any activity protected by STAA § 405, and recommended that a final order to that effect be entered. On July 23, 1990, Clay filed an objection to those findings pursuant to STAA § 405(c)(2)(A), which entitled him to a *de novo* hearing before an Administrative Law Judge ("ALJ").

The ALJ found that Castle had not violated § 405 and dismissed the complaint. The ALJ's decision was forwarded to the Secretary of Labor for review. On November 12, 1991, then-Secretary of Labor, Hon. Lynn Martin, issued an Order of Remand finding that Clay had been unlawfully discharged. The Secretary ordered that Clay be offered reinstatement and remanded the case to the ALJ for further findings as to the appropriate remedy. On December 20, 1991, Castle filed a petition for review of Secretary Martin's decision with this Court. The Secretary asserted that her order was not final, and the appeal was premature. The Secretary and Castle entered into a stipulation, "so ordered" by the Court on February 6, 1992, by which Castle withdrew the petition reserving the right to appeal the final order.

On February 28, 1994, the ALJ issued a Recommended Decision and Order Upon Remand awarding Clay back pay, attorney's fees and costs. On June 3, 1994, Secretary of Labor, Hon. Robert Reich, issued a Final Decision and Order changing the ALJ's computations slightly but generally adopting his recommendations. Castle filed a petition for review of the Secretary's decision with this Court on July 29, 1994. This Court has jurisdiction to review the Secretary's decision pursuant to STAA § 405(d)(1). 49 U.S.C. app. § 2305(d)(1).

## DISCUSSION

### A. Standard of Review

Under STAA § 405(d), judicial review of the Secretary's orders "shall be in accordance with the provisions of chapter 7, of Title 5 [5 U.S.C. §§ 701 et seq.]," the Administrative Procedures Act ("APA"). Under the APA, the Secretary's legal decisions must be sustained unless they are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and his findings of fact must be sustained unless they are "unsupported by substantial evidence" in the record as a whole. *See* 5 U.S.C. 706(2) (1988). In turn, in STAA cases, the Secretary is required to consider conclusive an ALJ's factual findings "if supported by substantial evidence on the record considered as a whole." 29 CFR § 1978.109(c)(3) ("STAA Rule 109(c)(3)").

In this case, the Secretary overturned the ALJ's decision in a largely factual dispute. Castle argues that we must set aside the Secretary's contrary decision if we find that the ALJ's decision was supported by substantial evidence. The Secretary argues simply that we must affirm his decision if we find that there is substantial evidence to support it.

Under STAA § 405(d)(1) we are only authorized to review the Secretary's order. 49 U.S.C. app. § 2305(d)(1). However, in reviewing the Secretary's decision, we must also determine whether under the STAA Rules he was bound by the ALJ's findings of fact. If there was substantial evidence to support the ALJ's findings, then the Secretary's refusal to treat them as conclusive was contrary to STAA Rule 109(c)(3) and his decision must be set aside.

### B. Substantial Evidence

In this case, the ALJ made findings of fact following a hearing. In doing so, he necessarily based his opinion on his impressions of the testimony of witnesses, their demeanor and credibility. Pursuant to STAA Rule 109(c)(3), then-Secretary Martin was bound to defer to such findings if they were supported by substantial evidence. However, the Secretary did not defer to these findings, she did not even address them, but rather reached her own conclusions based solely on written documents and transcripts. If Rule 109(c)(3) is to have any meaning at all, the Secretary must acknowledge his or her duty to defer to the ALJ's findings of fact, address

those findings and demonstrate the ways in which they are not supported by substantial evidence.

"Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *NLRB v. Columbian Enameling & Stamping Co.* 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939) (internal quotations & citation omitted). Because the ALJ's findings of fact in this case were supported by substantial evidence, the Secretary's contrary decision must be set aside.

### 1. § 405(b)

■ The ALJ found, first, that Castle did not violate § 405(b) of the STAA when it discharged Clay. Clay had the burden of proof in showing that Castle had violated the STAA when it discharged him. In order to show a violation of § 405(b), Clay had to show that he was discharged,

> "for refusing to operate a vehicle *when* such operation constitutes a violation of any Federal rules, regulations, standards, or orders applicable to commercial motor vehicle safety or health, *or because* of the employee's reasonable apprehension of serious injury to himself or the public due to the unsafe condition of such equipment."

49 U.S.C. app. § 2305(b) (1988) (emphasis added). The Administrative Law Judge found that Clay had failed to meet this burden. There was substantial evidence to support such a finding.

> Under the "because" clause of § 2305(b)[1], "[t]he unsafe conditions causing the employee's apprehension of injury must be of such nature that a reasonable person, under the circumstances then confronting the employee, would conclude that there is a bona fide danger of an accident, injury, or serious impairment of health, resulting from the unsafe condition."

1. There is no question of a violation of the "when" clause of § 2305(b), as there were no

49 U.S.C. app. § 2305(b) (1988). "[T]he objective reasonableness of the employee's perception that an unsafe condition existed [must] be evaluated in light of the situation that confronted the employee at the time." *Yellow Freight Systems, Inc. v. Reich and Thom,* 38 F.3d 76, 82 (2d Cir.1994).

■ In this case, the only evidence that Clay presented to support the reasonableness of his fears was his own testimony that he felt he was in imminent physical danger. Because Clay had refused to even approach any of the deliveries in question he was unable to provide evidence as to how the circumstances of those deliveries created an imminent danger. Nor was Clay able to produce any evidence that other drivers were apprehensive of making such deliveries or had been injured while doing so. Castle produced evidence that for many years they had 11 similar trucks on the road without complaint or injury. Clay admitted that he did not know of any driver who considered the deliveries a problem or who had refused to make such deliveries. Castle further demonstrated that the use of these trucks for left side deliveries did not violate any commercial motor vehicle safety standard as OSHA had concluded earlier. This constitutes substantial evidence to support the ALJ's decision that Clay had failed to meet his burden of proof in showing that under the circumstances confronting him there existed a bona fide danger resulting from an unsafe condition.

### 2. § 405(a)

The ALJ also found that Castle did not violate § 405(a) of the STAA when it discharged Clay. In order to show a violation of § 405(a), Clay had to show that he was "discharge[d], discipline[d], or in any manner discriminate[d] against" because he had "filed any complaint or instituted or caused to be instituted any proceeding relating to a violation of a commercial motor vehicle safety rule, regulation, standard, or order . . . ." 49 U.S.C. app. § 2305(a) (1988). The ALJ ruled that the mere allegation of a violation was

violations of rules, regulations or laws alleged.

enough to require the protection of this provision. Thus, even though there was not a violation of any motor vehicle safety rule for the purposes of the "when" clause of STAA § 405(b), there was an allegation sufficient to trigger STAA § 405(a).

■ The ALJ and the Secretary both applied the three prong test for a claim of retaliatory discharge. In order to establish a prima facie case of retaliatory discharge, a complainant must demonstrate that 1) he was involved in a protected activity, 2) he was later subject to adverse employment action, and 3) there was a causal link between the protected activity and the adverse action. The ALJ and the Secretary agreed that Clay was involved in protected activities and that he was subject to adverse employment action. The ALJ found that Clay had failed to establish a causal link between his protected activity and the adverse action of Castle. The Secretary found that there was such a link. Because the ALJ's finding was supported by substantial evidence, the Secretary's contrary decision must be set aside.

Clay first argued to the ALJ that his discharge constituted disparate treatment as other drivers who had failed to deliver had not been discharged. The ALJ found that the cases where other drivers had not been discharged were very different from Clay's case. The Daily Time Reports of these other drivers show that they had been *unable* to deliver, not *unwilling*, as Clay was, and that in each of those cases the driver had examined the circumstances whereas Clay was making a blanket refusal to deliver.

Clay next argued that his discharge clearly indicated animus towards him on the part of Castle. The ALJ found that there was no evidence that Castle held any animus towards Clay, that no one from Castle had attempted to dissuade Clay from making his complaints and that "nothing in the testimony of Respondent's witness indicated any animus towards [Clay]." It is undisputed that Castle had a procedure requiring drivers to complete Vehicle Inspection Reports through which safety complaints were to be made. It is also undisputed that Clay had made safety complaints in the past and that Castle had investigated and responded to each of the complaints. Clay conceded that he had never been reprimanded or disciplined for any of these prior complaints.

Further, there was evidence that Clay's complaint regarding truck #185 was addressed. Following Clay's February 3, 1990 notation that he thought there might be a law against making deliveries to the left side of a one way street from a vehicle with a right hand reel, Castle's Vice President for Operations Tony Feda consulted with Fleet Manager Gene Francese. They determined that there was no rule or regulation prohibiting such deliveries and that they did not consider the procedure hazardous. Finally, Clay refused to make further deliveries after Castle's decision that the procedure was not hazardous, consultation with his union and Castle's insistence that the deliveries be made. There was substantial evidence supporting the ALJ's finding that the discharge was based on the refusal to deliver, and that Clay failed to establish a causal link between his protected activity and the adverse action of Castle because he failed to prove either that he was subject to disparate treatment or that Castle had acted out of any animus towards him.

**Conclusion**

STAA Rule 109(c)(3) requires that the Secretary treat an ALJ's findings of fact as conclusive if they are supported by substantial evidence. The Secretary failed to do so. His Decision and Order of Remand of November 21, 1991 and Final Decision and Order of June 3, 1994 is set aside, and we direct the Secretary to adopt the ALJ's July 18, 1991 Decision and Order dismissing the complaint in its entirety.