148 F.3d 175
 135 Lab.Cas. P 10,194, 14 IER Cases 164,
1998 O.S.H.D. (CCH) P 31,594
 BRINK'S, INCORPORATED, Petitioner,
v.
Alexis M. HERMAN, Secretary of Labor, United States
Department of Labor; United States Department of
Labor, Administrative Review Board, Respondents,
Joseph A. Caimano, Intervenor.
 No. 481, Docket 96--4162.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 17, 1997.
Decided June 25, 1998.
 
 Jeffrey W. Pagano, New York City (Herbert I. Meyer, Ira M. Saxe, King, Pagano & Harrison, New York City, on the brief), for Petitioner.
 John Shortall, Department of Labor, Washington, DC (J. Davitt McAteer, Acting Solicitor of Labor, Joseph M. Woodward, Associate Solicitor for Occupational Safety and Health, Ann Rosenthal, Counsel for Appellate Litigation, U.S. Department of Labor, Washington, DC, on the brief), for Respondents.
 Ted E. Karatinos, St. Petersburg, FL (Seeley & Karatinos, P.A., St. Petersburg, FL, on the brief), for Intervenor.
 Before: JACOBS and LEVAL, Circuit Judges, and RESTANI, Judge.*
 LEVAL, Circuit Judge:
 
 
 1
 Brink's Inc. ("Brinks"), an armored car delivery company, discharged the intervenor Joseph A. Caimano, a messenger in its employ, when he refused to go out on his daily run. Caimano filed a complaint with the U.S. Department of Labor, alleging that he was discharged for raising safety concerns and for refusing to work in an unsafe vehicle, and that his discharge therefore violated §§ 405(a) and (b) of the Surface Transportation Assistance Act of 1982 ("STAA"), 49 U.S.C. app. § 2305.[1]
 
 
 2
 A hearing was held before an Administrative Law Judge ("ALJ") who found that Brinks had not violated the STAA. The Secretary of Labor rejected the ALJ's Recommended Decision and Order, and ordered Caimano reinstated with back pay. Brinks petitioned this Court for review of the Secretary's findings. We grant the employer's petition for review, set aside the Secretary's Decision and Order of Remand, and direct that Caimano's complaint be dismissed in accordance with the ALJ's findings.
 
 Background
 
 3
 Brinks is in the business of transporting and protecting the currency and valuables of banks and other commercial establishments. Brinks performs these services through the use of armored vehicles which are routed on daily runs to customer locations. A typical two-person armored vehicle is staffed by a driver and a messenger. The driver sits in the cab of the vehicle while the messenger sits in the rear compartment with the valuables. According to Brinks policy, the messenger is in charge of the run, including the route to be driven and the order of stops. At each stop, the messenger is responsible for delivering and picking up valuables from customers while the driver remains in the vehicle.
 
 
 4
 Brinks vehicles are typically equipped with an electric door lock to the rear compartment that allows the driver to prevent access by third parties, a base radio in the cab to allow the driver to communicate with the Brinks central office, and a portable radio set for communication between the messenger and driver.
 
 
 5
 Caimano began working for Brinks in Tampa, Florida on September 16, 1991, as a part-time driver. In January 1993, he was promoted to the position of full-time messenger. On April 21, 1994, upon reporting for work, Caimano was told that he was scheduled to ride with Bombo Rivera, a driver who had little experience with Caimano's assigned route, and that they would be using Truck # 201.
 
 
 6
 Caimano told Billie Creamer, the Vault Cashier in the Brinks office, he was concerned that because # 201 had no portable radio set, he would be unable to communicate directions to the driver, and the vehicle would be unsafe.
 
 
 7
 Creamer referred the matter to his immediate supervisor, David Espinosa. Caimano repeated these concerns to Espinosa. Espinosa unsuccessfully sought to locate a spare portable radio. Another messenger, Mario Rodriguez, offered to switch trucks with Caimano, but Caimano rejected the offer.
 
 
 8
 Espinosa telephoned Branch Manager Terry Dawson and apprised him of the situation. Dawson offered to provide Caimano with a radio set; Caimano refused because, he claimed, the radio batteries would wear down before the end of the run and # 201 lacked a battery recharger. Dawson then offered to send out a replacement driver to meet up with Caimano during the run and to send out two fully-charged radios during the run to replace the initial set. Caimano rejected these offers as well.
 
 
 9
 Dawson then stated that he did not have any other options for Caimano and asked Caimano whether he was going to take the truck out. Dawson told Caimano that if he did not take the truck out, he would be fired. Caimano did not answer Dawson's question, but requested to speak to Brinks Regional General Manager, Doug Ellison. Dawson connected Caimano to Ellison, who, after hearing Caimano's problem and his refusal of Dawson's offers, similarly asked Caimano if he would take the truck out. When Caimano again did not answer, Ellison fired him.
 
 
 10
 Caimano filed a complaint with the U.S. Department of Labor, alleging that he was discharged "for refusing to drive an unsafe vehicle" and for "voicing ... safety concerns regarding trucks." In a subsequent letter to the Department of Labor elaborating on his complaint, Caimano took the position that because the driver Rivera had not been familiar with the route, he would have needed to receive instructions from Caimano. This would have been problematic because, he said, the bulkhead separating the cab from the cargo compartment prevented ordinary oral communication between driver and messenger. Without a portable radio set, Caimano contended, Rivera would have been unable to hear Caimano's directions and would have been forced to take his eyes off the road to look in the rear-view mirror and attempt to lip read Caimano's instructions. This would have created a hazardous condition.[2] Caimano also alleged that his firing had been "the direct result of," and in retaliation for, complaints he had made six weeks prior to his discharge on March 8, 1994 during a "speak-out" session between Brinks management and its employees.[3] At that session, Caimano asked about fuel fumes in the rear compartment of # 201. Dawson responded that # 201 would be sent to an environmental station to be checked out. It appears the issue of fumes was never again mentioned by Caimano until after filing his complaint with the Labor Department.
 
 
 11
 After an initial investigation, the Department of Labor issued findings dated September 26, 1994, determining that Brinks had not violated § 405 of the STAA in discharging Caimano. The findings stated that Caimano did not have a "reasonable apprehension of serious injury to himself or the public due to the unsafe condition of [the truck]." With respect to Caimano's allegation that he had been fired for his complaints at the March 8 speak-out, the Department concluded that "[t]he evidence did not establish ... that there was any causal link between [Caimano's] complaints at that meeting and his termination approximately six weeks later."
 
 
 12
 Caimano filed objections pursuant to STAA § 405(c)(2)(A). A de novo hearing was held before an ALJ. The ALJ issued a Recommended Decision and Order also concluding that Brinks had not violated the STAA. The ALJ examined Caimano's contentions and found that each was either "unreasonable" or that Brinks had "acted responsibly" in providing a remedy.[4] The ALJ concluded that "none of the specific allegations made by [Caimano] were of a serious enough nature to warrant a refusal to take the truck out based on safety." The ALJ further found no "meaningful relationship" between Caimano's complaints at the March 8 speak-out session and Caimano's discharge and that Caimano was terminated solely for his insubordination in refusing to work.
 
 
 13
 Caimano appealed the ALJ's findings to the Secretary. Upon that appeal, the Secretary was obligated by regulation to treat the ALJ's findings as conclusive if supported by substantial evidence. See 29 C.F.R. § 1978.109(c)(3)(1997). In a Decision and Order of Remand dated January 26, 1996, the Secretary rejected the ALJ's findings. The Secretary stated that the ALJ had "failed to render factual findings pertinent to all dispositive legal issues before him." The Secretary concluded that "[c]ontrary to the ALJ's finding, ... the evidence does establish that Caimano was reasonably apprehensive that driving Truck 201 on April 21, 1994 could result in possible injury to himself or the public." The Secretary found that Caimano had a reasonable safety apprehension by reason of the lack of portable radios and the possible presence of fumes in the rear compartment of # 201. Furthermore, the Secretary found that the alternatives proposed by Brinks were inadequate to resolve Caimano's apprehension. Finally, the Secretary found that Caimano had been discharged at least in part because of his earlier complaints, including those made at the March 8 speak-out.[5] Accordingly, the Secretary ordered Brinks to offer Caimano reinstatement; to pay all back pay and other appropriate compensation, with interest; and to pay Caimano's costs and expenses incurred in bringing his complaint. The Secretary remanded the case to the ALJ to establish a complete remedy consistent with his order.
 
 
 14
 On remand, the parties agreed to a partial settlement as to the amount of damages, preserving Brinks's right to appeal its liability. This appeal on the question of liability followed.
 
 Discussion
 I. Standard of Review
 
 15
 Section 405(d) of the STAA, which pertains to judicial review of the Secretary's orders, states that "[s]uch review shall be accordance with the provisions of chapter 7 of Title 5, United States Code," the Administrative Procedure Act ("APA"). See Castle Coal & Oil Co. v. Reich, 55 F.3d 41, 44 (2d Cir.1995). The APA provides that an administrative agency's legal decisions must be "sustained unless they are found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' and its findings of fact must be sustained unless they are 'unsupported by substantial evidence' in the record as a whole." Id. (quoting 5 U.S.C. § 706(2)(A)). However, the regulations of the Department of Labor applicable to STAA cases impose on the Secretary a similar duty of deference to the findings of the ALJ; the Secretary is required to consider the ALJ's findings conclusive if they are "supported by substantial evidence on the record considered as a whole." See 29 C.F.R. § 1978.109(c)(3) ("STAA Rule 109(c)(3)"). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Castle Coal, 55 F.3d at 45 (quoting NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939) (internal quotation marks omitted)).
 
 
 16
 While § 405(d)(1) limits this court to reviewing only the Secretary's order,
 
 
 17
 [the court] must also determine whether under the STAA Rules [the Secretary] was bound by the ALJ's findings of fact. If there was substantial evidence to support the ALJ's findings, then the Secretary's refusal to treat them as conclusive was contrary to STAA Rule 109(c)(3) and his decision must be set aside.
 
 
 18
 Castle Coal, 55 F.3d at 44. Thus, if we determine that the ALJ's decision was based on substantial evidence, we must reverse the Secretary and order that the ALJ's decision be adopted; this is so even if the Secretary's decision was also based on substantial evidence.
 
 II. The STAA
 
 19
 Congress passed the Surface Transportation Assistance Act in order to "combat the 'increasing number of deaths, injuries, and property damage' resulting from vehicle accidents in the interstate trucking industry." Yellow Freight Systems, Inc. v. Reich, 38 F.3d 76, 81 (2d Cir.1994) (quoting 128 Cong. Rec. 32509, 32510 (1982)). Additionally, Congress sought " 'to assure that employees are not forced to drive unsafe vehicles or commit unsafe acts,' and to 'provide protection for those employees who are discharged or discriminated against for exercising their rights and responsibilities.' " Id. ((quoting 128 Cong. Rec. 29192) (1982)). To achieve this latter purpose, Congress included Section 405 in the STAA. See id.
 
 
 20
 a. Complaint Clause: STAA Section 405(a)
 
 
 21
 Caimano's contention that he was illegally terminated because he complained of gas fumes in # 201 at the March 8 "speak-out" session relies on section 405(a) of the STAA, 49 U.S.C. app. § 2305(a), known as the "complaint clause."
 
 
 22
 Section 405(a) provides that "[n]o person shall discharge, discipline, or in any manner discriminate against any employee ... because such employee ... has filed any complaint or instituted or caused to be instituted any proceeding relating to a violation of a commercial motor vehicle safety rule, regulation, standard, or order." STAA § 405(a), 49 U.S.C. app. § 2305(a).
 
 
 23
 The ALJ heard the evidence on this claim and found that there was no "meaningful relationship between [Caimano's] complaints at the 'speak-out' session and his termination." To the contrary, the ALJ found that Caimano was discharged for insubordination on April 21, 1994, when he refused to work in # 201.
 
 
 24
 This finding was fully supported by the record of the hearing. The evidence showed that Caimano was fired on April 21 when he refused to go out in # 201, after the Brinks management had undertaken to remedy the lack of a radio set. Indeed, there was virtually no evidence supporting Caimano's contention that his discharge was motivated by his having complained of the gas fumes on March 8. When Caimano raised the issue on March 8, Brinks undertook to have any problem corrected in the fuel emissions shop. The issue was never raised again until Caimano made it a part of his allegations to the Labor Department. The evidence strongly supports the inference that the problem was corrected and that the incident had no bearing on his discharge. Based on the evidence of record, the ALJ's conclusion was well supported.[6]
 
 
 25
 The Secretary asserted that the ALJ had failed to address the complaint clause question. The Secretary, accordingly, made findings of his own rather than review the ALJ's findings. While it is true that the ALJ did not expressly refer to the "complaint clause," he considered directly the question that arose under this clause--whether Caimano was fired because of complaints he had made. As noted, the ALJ found that this was not the case. The ALJ found that Caimano was fired "solely on the basis of" his "insubordination" in refusing to take out # 201. This conclusion was supported by substantial evidence. The Secretary was therefore required under STAA Rule 109(c)(3) to consider it conclusive. See 29 C.F.R. § 1978.109(a)(3). It precluded the contrary determination that Caimano was fired because of prior complaints. See Castle Coal, 55 F.3d at 44. We must vacate the Secretary's findings and direct the entry of an order based on the ALJ's well-supported findings that Caimano failed to show violation of the "complaint clause."
 
 
 26
 b. Work Refusal Clause: STAA Section 405(b)
 
 
 27
 The Secretary also found a violation of Section 405(b) of the STAA, 49 U.S.C. app. § 2305(b), the so-called "work refusal clause," which bars discrimination against an employee by reason of his refusal to work in illegal or unsafe conditions. The pertinent portion of the statute, known as the "because" clause, prohibits the employer from discharging or discriminating against an employee for refusing to operate or utilize a vehicle "because of the employee's reasonable apprehension of serious injury to himself or the public due to the unsafe condition of such equipment." STAA § 405(b), 49 U.S.C. app. § 2305(b). The statute explains its standards as follows:
 
 
 28
 The unsafe conditions causing the employee's apprehension of injury must be of such nature that a reasonable person, under the circumstances then confronting the employee, would conclude that there is a bona fide danger of an accident, injury, or serious impairment of health, resulting from the unsafe condition. In order to qualify for protection under this subsection, the employee must have sought from his employer, and have been unable to obtain, correction of the unsafe condition.
 
 
 29
 STAA § 405(b), 49 U.S.C. app. § 2305(b). Therefore, in order to make out his case, Caimano must establish that (i) he refused to operate # 201 because he was apprehensive of an unsafe condition of the vehicle; (ii) his apprehension was objectively reasonable; (iii) he sought to have Brinks correct the condition; and (iv) Brinks failed to do so.
 
 
 30
 The Secretary found that Caimano had established a violation on two bases: the lack of a portable radio set and the presence of gas fumes in the rear compartment of the truck.
 
 
 31
 1. Portable Radio Set.
 
 
 32
 The ALJ rejected Caimano's claim relating to the lack of a portable radio for two reasons: first, that the provision of portable radio communication between driver and messenger was not a requirement of the STAA, and, second, that when Caimano complained of the absence of a radio set, Brinks cured the problem by offering to provide one. (JA 19) The ALJ therefore found that, at least following the offer to cure, Caimano's safety concern was not objectively reasonable. We need not discuss the first question because, on the record, the ALJ's finding with respect to the second was clearly supported by substantial evidence and should thus have been considered conclusive.
 
 
 33
 The evidence at the hearing showed that, on hearing Caimano's complaint of the absence of a radio, Dawson offered to provide a radio set. When Caimano continued to refuse to work contending that the radio batteries would run down, Dawson offered to deliver a fully charged replacement set that would maintain its charge through the expected course of the run. Caimano nonetheless continued to refuse. There was thus undoubtedly substantial support for the ALJ's rejection of Ciamano's claim. The evidence supported the ALJ's conclusion that Caimano's presentation of his case as a matter of safety concerns was a "restructured scenario" and that "in actual fact he was merely a somewhat disgruntled overly complaining individual," who was properly fired "solely on the basis of [his] insubordination."In order to make out his case under the "because" clause of Section 405(b), Caimano was required to show both that his apprehension of an unsafe condition was objectively "reasonable" and that, despite seeking a correction of the condition, he was unable to obtain correction. The ALJ's properly supported finding that Caimano failed to sustain this burden must be considered conclusive under the standards of the STAA. The Secretary's decision must therefore be set aside.
 
 
 34
 2. The fuel fumes.
 
 
 35
 There was no violation of the "because" clause with respect to Caimano's belatedly alleged apprehension of fuel fumes in the rear compartment of # 201. On April 21, at the time of his work refusal, Caimano elaborately and repeatedly raised his concerns about the lack of radios and other matters, but made no mention whatsoever of fuel fumes. Brinks could not have responded to safety concerns that were not called to its attention. The "because" clause requires that an employee "must have sought from his employer, and have been unable to obtain, correction of the unsafe condition." STAA § 405(b).[7]
 
 Conclusion
 
 36
 Brinks's petition for review is granted. The decision of the Secretary is vacated. The Secretary is directed to enter decision in favor of Brinks.
 
 
 
 *
 The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation
 
 
 [1]
 On July 5, 1994, § 405 of the STAA was renumbered and reorganized without substantive change and is now codified at 49 U.S.C. § 31105. See Act of July 5, 1994, Pub.L. 103-272, § 1(e), 108 Stat. 745, 990. The parties agree that, because the events took place prior to July 5, 1994, the old version, 49 U.S.C. app. § 2305, should apply to the instant case
 
 
 [2]
 Brinks disputes the relevance of the portable radio set. It contends this radio was provided to permit communication between messenger and driver while the messenger was outside the vehicle--not to permit the messenger to give driving directions. It disputes that the driver needed to receive instructions from the messenger as to where and when to make turns. Brinks therefore contends the radio was not relevant to vehicular safety. For reasons explained below, we need not resolve that dispute
 
 
 [3]
 Brinks held such meetings periodically to solicit employee grievances and to answer employee questions
 
 
 [4]
 As alternative bases for his decision, the ALJ concluded that Caimano, as a messenger, was not a covered "employee" within the meaning of the STAA, and that Caimano's conduct was outside the scope of activity protected by the STAA because it related to concerns about "outside interference," i.e., security concerns, as opposed to vehicle safety concerns
 
 
 [5]
 The Secretary found that the ALJ had failed to consider the portion of § 405 (the "complaint clause") that protects employees from adverse employment actions based on complaints about the safety of an employer's vehicle
 
 
 [6]
 The Secretary's decision also found that Caimano's complaints to a manager prior to April 21 relating to the lack of a radio set in # 201 was a protected activity under the complaint clause. However, the statute only protects complaints relating to "a violation of a commercial motor vehicle safety rule, regulation, standard, or order," 49 U.S.C. app. § 2305(a); the Secretary points to no such rule or regulation convering radio sets
 
 
 [7]
 It is true Caimano had raised a question of fuel fumes among various complaints at a speak-out session six weeks prior to the incident. There was evidence that Brinks undertook to look into the question. Caimano never mentioned it to Brinks again. In connection with this dispute, the issue was first raised by Caimano in a letter to the Labor Board after the submission of his complaint. This letter mentions the speak-out session only in the context of Caimano's assertion that he was fired in retaliation for having complained at the speak-out session. Even then, he made no assertion that fumes were any part of his reason for refusing to work on April 21. The evidence makes clear that Caimano's refusal to work on April 21 was unrelated to any issue of fumes, and that his discussions with Brinks at that time neither directly nor inferentially included a request for a correction of any such problem