SUMMARY ORDER
At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at Foley Square, in the City of New York, on the 14th day of October, two thousand and five.
UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED and the cross-application for enforcement is GRANTED.
Petitioner-Cross-Respondent United Cerebral Palsy of New York City, Inc. (“UCP”) petitions for review of a September 28, 2004 decision and order of the National Labor Relations Board (“NLRB” or “Board”) granting a motion for summary judgment brought by the United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO (“the Union”), which is before this court as Intervenor. The NLRB found that UCP violated §§ 8(a)(1) and (5) of the National Labor Relations Act (“NLRA” or “the Act”), 29 U.S.C. §§ 158(a)(1), (5), by refusing to bargain with the Union as the exclusive bargaining representative of certain classes of its employees. UCP admits that it refused to bargain, but argues that the Board’s certification of the Union is invalid because the employees in question are “supervisors” within the meaning of the Act, and consequently lack collective bargaining rights under the terms of the Act, see NLRA § 14(a), 29 U.S.C. § 164(a).
We assume the parties’ familiarity with the facts, the procedural history, and the specification of issues on review.
I
The key issue in this case is whether teachers, developmental specialists, and habilitation specialists employed by UCP are “supervisors” as the term is defined in NLRA § 2(11), 29 U.S.C. § 152(11). We affirm NLRB determinations of supervisory status so long as they are supported by substantial evidence in the record. Schnurmacher Nursing Home v. NLRB, 214 F.3d 260, 265 (2d Cir.2000). Here, evidence was presented to the NLRB’s Acting Regional Director (“ARD”) that these teachers and specialists did not meet any of the statutory indicia of supervisory status. For example, with respect to hiring, a habilitation specialist named specific instances when UCP did not follow his recommendations to hire, not to hire, and not to terminate certain assistants. That habilitation specialist also testified that he was invited to participate in job interviews only following the union election in 2001, and the ARD noted that an employer’s attempt to “clothe” employees with supervisory status in this way does not prove that their hiring recommendations are effective, as recommendations must be to qualify the employees as statutory supervisors. 29 U.S.C. § 152(11).
UCP has presented some evidence, especially dealing with teachers, that tends in the direction of the relevant employees *368 having supervisory status. The ARD, however, found this evidence to be either in tension with other record evidence or conclusory. For instance, the director of the children’s program testified as to two occasions when he made hires on the recommendations of teachers. But under subsequent questioning, he admitted that he was not certain that the candidates had even met with teachers before he gave them job offers. Moreover, while the same director also stated generically that he followed teachers’ hiring recommendations, he did not indicate what role such recommendations played in the hiring process as against other factors (for example, candidates’ references and resumes, neither of which were reviewed by teachers).
Ultimately, the ARD concluded that UCP had not met its burden of proving supervisory status. And we cannot say that the ARD erred as a matter of law. See NLRB v. G & T Terminal Packaging Co., 246 F.3d 103, 114 (2d Cir.2001) (noting that we may displace the Board’s choice between two fairly conflicting views only if, on the record as a whole, no rational trier of fact could have reached the conclusion drawn by the Board). To convince the ARD to resolve this dispute in its favor, UCP might have offered clearer and more detailed evidence as to its management structure and the policies and protocols that informed its hiring, termination, and discipline decisions. But on the record before us, we are unable to say that no substantial evidence supports the ARD’s conclusion, which was adopted by the NLRB. Cf. Castle Coal & Oil Co. v. Reich, 55 F.3d 41, 45 (2d Cir.1995).
II
In his Supplemental Decision, the ARD asserted that he would not follow our decision in NLRB v. Quinnipiac College, 256 F.3d 68 (2d Cir.2001), with respect to the question of what it means to make an effective recommendation within the meaning of the Act. Failure to follow the holding of the United States Court of Appeals which has jurisdiction over a matter is, of course, reversible error. Ithaca College v. NLRB, 623 F.2d 224, 228 (2d Cir.1980) (“[T]he Board cannot, as it did here, choose to ignore the [Second Circuit’s] decision as if it had no force or effect. Absent reversal, that decision is the law which the Board must follow.”). Quinnipiac College held that an employee may “effectively recommend” discipline within the meaning of § 2(11) of the Act even when a superior must conduct an independent investigation before imposing discipline. 256 F.3d at 76. In fact, nothing in the ARD’s opinion is contrary to our holding in Quinnipiac College. The ARD apparently read the case, wrongly, to eliminate the statutory requirement that petitioners show disciplinary recommendations to be effective. This handling of Quinnipiac College was error on the part of the ARD, but, as the NLRB found in denying UCP’s request for review, this error was immaterial to his disposition of the instant case. Accordingly, this error does not disturb our finding that substantial evidence supports the NLRB’s determination that the teachers and specialists are not supervisors.
We have reviewed all of UCP’s contentions and find them to be without merit. Accordingly, we DENY the petition for review and GRANT the cross-application for enforcement of the Board’s order.