**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Eva Agnes KUTAS, Defendant-Appellant
(two cases).**

Nos. 75–2756, 75–3806.

United States Court of Appeals,
Ninth Circuit.

Sept. 27, 1976.

Norman Sepenuk (argued), Portland, Or., for defendant-appellant.

Kristine Olson Rogers, Asst. U.S. Atty. (argued), Portland, Or., for plaintiff-appellee.

Before KOELSCH, DUNIWAY and CHOY, Circuit Judges.

DUNIWAY, Circuit Judge:

Kutas appeals from a judgment of conviction of harboring and concealing, and of conspiracy to harbor and conceal, an escaped federal prisoner in violation of 18 U.S.C. §§ 1072 and 371. She also appeals from an order denying her motion for a new trial. We affirm in both appeals.

## I. The Sufficiency of the Evidence.

We state the evidence in the light most favorable to the government, *Glasser v. United States*, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680. On May 17, 1974, Carl Bowles, a federal prisoner serving concurrent state and federal sentences at the Oregon State Penitentiary, left the penitentiary under a four-hour pass and failed to return. Coconspirator Joan Coberly hid Bowles for approximately ten days, after which she and Bowles were driven to a house in Eugene, Oregon, where coconspirator Ray Eaglin was persuaded to help Bowles to escape. Kutas was present in the house at the time. Over the next hour or so Kutas and Eaglin loaded gear and supplies into a stationwagon. Then Eaglin drove Bowles, Kutas and Coberly to a remote area of the Willamette National Forest where Bowles and Coberly set up camp in an underground bunker some distance into the forest. On the trip from Eugene to the campsite, Kutas prepared a list of things which Bowles would need for a long stay at the campsite. Throughout the trip, Eaglin carried a handgun visible in a side holster, at some point gave Bowles a gun, and, according to Coberly, told Bowles in Kutas'

presence: "I don't think they are going to be looking for you, because everybody is looking for Hearst."

The evidence was sufficient to support a jury finding that Kutas knowingly harbored and concealed an escaped prisoner. Whether Kutas knew that Bowles was an escaped prisoner was for the jury; the knowledge could be inferred. Her claim that the evidence did not show, that she harbored and concealed Bowles is also without merit. The evidence shows that she participated intimately in "transporting [Bowles and] furnishing him food, clothing, and a gun." *United States v. Hobson*, 9 Cir., 1975, 519 F.2d 765, 774.

## II. The Alleged Hearsay Statement.

Kutas argues that Coberly's testimony that Eaglin told Bowles, in Kutas' presence, that the police weren't looking for him because they were looking for Hearst, was inadmissible and prejudicial hearsay. The government replies that the statement is admissible as a coconspirator's declaration. Neither argument is applicable here. Coberly's testimony was not hearsay. Federal Rules of Evidence, Rule 801(c), defines hearsay as "a statement . . . offered in evidence to prove the truth of the matter asserted." Coberly's testimony was not offered to prove the truth of Eaglin's statement. Whether the police were in fact looking for Bowles or Hearst was never an issue. The statement was admitted as evidence from which it could be inferred that Kutas knew that Bowles was an escapee. It was the fact that Eaglin made the statement, not the truth of the statement, that was significant. *See United States v. Calaway*, 9 Cir., 1975, 524 F.2d 609, 613.

## III. The Jury Instruction.

The court instructed the jury as follows:

The words "harbor" and "conceal" refer to any physical act of providing assistance, including food, shelter, and other assistance to aid the prisoner in avoiding detection and apprehension.

In light of the interpretation given to "harbor and conceal" in *United States v. Hobson, supra,* 519 F.2d at 773–74, the instruction was correct.

### IV. *Effective Assistance of Counsel.*

In support of her motion for a new trial, Kutas argues that she was denied effective assistance of counsel because Ackerman, her attorney, also represented Eaglin at the joint trial, and his duty to Eaglin conflicted with his duty to Kutas, to her prejudice.

Evidence received at the hearing of the motion for a new trial disclosed the following: Kutas was originally represented by a court-appointed attorney, but she quickly became dissatisfied with him. She therefore dismissed him and approached Ackerman, Eaglin's appointed counsel, asking him to represent her also. He was representing, on retainer, a codefendant, Maltzman, and agreed to act for Kutas. Ackerman explained to her that conflict of interest problems often arise in joint representation cases, and he gave her a number of specific examples. This conversation was later confirmed in a letter from Ackerman to Kutas. Ackerman also discussed the matter with the magistrate assigned to Kutas' case.

The magistrate, although he had been assured by Ackerman that investigation for the defense was almost completed without revealing any trace of a conflict, did not allow Ackerman to represent the defendants jointly until each defendant had signed an affidavit agreeing to joint representation. The affidavit stated that each defendant knew about possible conflicts, had discussed the matter thoroughly with Ackerman, realized that each had a right to separate counsel, and that each saw no factual or legal issues which would give rise to any conflict. The affidavit also stated that each defendant recognized a continuing duty to disclose any conflict the minute it arose, and that each knew that Ackerman could only represent one of them if that happened. During the trial, no defendant expressed any concern about the joint representation, nor did Ackerman, and Ackerman frequently reassured the court that no conflicts existed.

After her conviction and sentencing, Kutas' family retained yet another attorney for her, and shortly thereafter this attorney filed a motion for a new trial based on the ground that Ackerman's joint representation prejudiced Kutas' defense. She claims now that, because Ackerman also represented Eaglin, he failed to seek a severance of the trials, failed to inform her of her right to separate counsel and influenced her improperly in advising her not to waive a jury trial, not to testify, and not to accept an offer of immunity.

The long established rule in this circuit is that to prevail on this ground, the defendant has the burden of establishing that the joint representation in fact created an actual conflict of interest and prejudiced her defense. *See, e. g., United States v. Nystrom,* 9 Cir., 1971, 447 F.2d 1350, 1351; *Davidson v. Cupp,* 9 Cir., 1971, 446 F.2d 642, 643. Kutas argues that we should reject this approach in favor of the District of Columbia Circuit's more "liberal" rule. This suggestion was specifically rejected in *Carlson v. Nelson,* 9 Cir., 1971, 443 F.2d 21, 22, and we reject it again. We think that, especially in a case like this, where, despite the hesitation of counsel and the court, the defendant insists on joint representation, makes no objection throughout the trial, and after conviction seeks a new trial, the burden should be on the defendant to show that a conflict actually existed and that it actually prejudiced her rights. Any other rule would allow defendants to plant almost certain error in the record.

Given Kutas' burden of proof, we conclude that she has failed to show that she was actually prejudiced by any conflict. Kutas was aware of her right to separate counsel, and she had no desire to seek a severance. The testimony of both Ackerman and the attorney representing another co-defendant is that Kutas agreed with, and was very pleased with, the decision not to have any defendant testify. We do not accept the after-the-fact claim, which the trial court rejected, that the strategy designed to avoid cross-examination was moti-

vated by a conflict of interest. *See United States v. Wisniewski*, 2 Cir., 1973, 478 F.2d 274, 284. Likewise, we will not reverse the denial of a motion for a new trial based on the fact that the defendants initially disagreed on whether to waive a jury trial when they later agreed without any claim of conflict of interest. *See Kaplan v. United States*, 9 Cir., 1967, 375 F.2d 895, 898. Finally, the record shows that Kutas' refusal to accept immunity arose out of her feelings of comradeship and solidarity with the other defendants, and not because of any conflict of interest that her counsel may have had. In fact, Ackerman advised her to weigh the offer carefully. In sum, Kutas has been unable to demonstrate that her defense was in any way prejudiced by Ackerman's joint representation.

Additionally, even were Kutas able to point to some prejudice, nevertheless her affidavit satisfies the burden of demonstrating that she knowingly and voluntarily waived her right to separate counsel. Kutas is an intelligent and well educated woman holding a master's degree from the University of Oregon. It is inconceivable that, after Ackerman's many discussions with her on the subject, she was not aware of her rights or of the potential problems involved in having joint counsel. She validly waived her right to separate counsel, as the trial judge found. *See United States v. Frame*, 9 Cir., 1972, 454 F.2d 1136, 1138.

The judgment and the order appealed from are affirmed.