**Thomas A. SARTAIN, Petitioner,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

No. 76–2935.

United States Court of Appeals, Ninth Circuit.

May 8, 1979.

Robert D. Carrow (argued), Carrow & Forest, Novato, Cal., for petitioner.

Irving H. Picard (argued), Securities & Exchange Com'n, Washington, D. C., for respondent.

Before DUNIWAY, CHOY and KENNEDY, Circuit Judges.

DUNIWAY, Circuit Judge:

Thomas A. Sartain petitions this court, pursuant to Section 25(a)(1) of the Securities Exchange Act of 1934, 15 U.S.C. § 78y(a)(1), to review an order of the Securities and Exchange Commission.

We affirm.

## I. *The Facts.*

Sartain was involved with three entities: a holding company, Capital Planning Associates, Inc. (Planning Associates), a real estate investment trust, National Real Estate Fund (Real Estate), which was founded by Planning Associates, and a broker-dealer, Capital Planning Securities Co., Inc. (Securities), a wholly owned subsidiary of Planning Associates, formed to underwrite the sale of Real Estate's securities. Sartain served as President of Planning Associates, as one of its three directors, and, along with two other men, owned 90% of its stock. He was one of Real Estate's three managing trustees, and in that capacity he took charge of Real Estate's day to day operations. He sold Real Estate's securities as a registered representative of Securities.

The Commission found Sartain responsible for three abuses in connection with Real Estate's securities, each of which violates a rule of the National Association of Securities Dealers (NASD). NASD is a registered association under § 15A(a) of the Securities Exchange Act, 15 U.S.C. § 78o-3(a). Its rules have been determined by the Commission to be "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, . . . and, in general, to protect investors and the public interest . . . ." § 15A(b)6, 15 U.S.C. § 78o-3(b)(6). The Act also requires NASD to adopt rules which " . . . provide that its members and persons associated with its members shall be appropriately disciplined, by expulsion, suspension, fine, censure, or being suspended or barred from being associated with all members, or any other fitting penalty, for any violation of its rules." § 15A(b)(9), 15 U.S.C. § 78o-3(b)(9), now § 15A(b)(7), 15 U.S.C. § 78o-3(b)(7). The Commission has supervisory authority over disciplinary actions of NASD. § 19(e), 15 U.S.C. § 78s(e). The violations found are these:

First, when an issuer of a security and the broker selling that security are under common control, Section 13 of the NASD Rules of Fair Practice [1] requires the broker to disclose the common control to its customers. Here, investors buying Real Estate shares through Securities were not told that Real Estate and Securities were under the common control of Planning Associates. *Armstrong, Jones & Co. v. Securities and Exchange Commission,* 6 Cir., 1970, 421 F.2d 359, 363.

Second, in talking with the public, Sartain emphasized that Real Estate shares were not a liquid investment, that Real Estate could not redeem its shares for cash, and that there was no organized market trading in its shares. Thus, when investors purchased Real Estate shares through Securities they would naturally assume that they were buying newly issued shares and that the money they were investing would go to Real Estate, in turn increasing the amount of its capital. In fact, Securities sold many of its customers shares belonging to earlier investors in Real Estate who had decided to get their money out. While such "cross trading" provided a service to the earlier investors, it became improper when Sartain and other of Securities' representatives failed to tell the later investors that Securities was selling them cross traded shares.

Still worse, a significant proportion of the cross traded shares belonged to Sartain himself and to other Planning Associates and Real Estate insiders. Prudent investors would certainly have been interested to learn that these insiders were liquidating significant portions of their own holdings. The Commission found that the failure to disclose these material facts with regard to the cross trading violated Section 1 of the NASD Rules of Fair Practice which provides that "A member, in the conduct of his business, shall observe high standards of commercial honor and just and equitable principles of trade." See CCH NASD Manual ¶ 2151.

Third, Section 12 of NASD's Rules of Fair Practice provides that a broker-dealer member such as Securities,

at or before the completion of each transaction with a customer shall give or send to such customer written notification disclosing (1) whether such member is acting as a broker for such customer, as a dealer for his own account, as a broker for some other person, or as a broker for both such customer and some other person. . . CCH NASD Manual ¶ 2162.

In other words, investors are entitled to know when their broker is dealing with them rather than for them. Here, Sartain and Securities failed to provide the Section 12 confirmations.

## II. *The Administrative Proceedings.*

On May 16, 1974, an NASD District Business Conduct Committee filed a complaint against Sartain and others involved in Securities' sales of Real Estate securities. It alleged the three violations sustained by the Commission. It also charged that Sartain's three violations were manipulative, deceptive or otherwise fraudulent devices or contrivance in violation of the NASD's intentional fraud provision, Section 18 (CCH NASD Manual ¶ 2168), and that Sartain had improperly arranged a short-term purchase and sale in order to secure a dividend for a favored customer.

After a hearing, NASD's Committee found that Sartain had violated the Rules of Fair Practice as charged. It censured Sartain and barred him from ever again having an association with an NASD member. The Committee explained that in fixing the penalty, it had "taken note of the dominant role of Thomas A. Sartain with regard to the activities" which it described

1. Section 13 of the NASD's Rules of Fair Practice require that:

A member controlled by, controlling, or under common control with the issuer of any security, shall, before entering into any contract with or for a customer for the purchase or sale of such security, disclose to such customer the existence of such control, and if such disclosure is not made in writing, it shall be supplemented by the giving or sending of written disclosure at or before the completion of the transaction.

See CCH NASD Manual ¶ 2163.

as having "had the effect of perpetrating a fraud and deceit on the purchasers of this issue of securities." (R. 351.)

Sartain appealed to the Board of Governors of the NASD which gave him an opportunity to present new evidence at a second hearing. On April 14, 1975, the Board of Governors upheld all of the Conduct Committee's findings except its finding of intentional fraud. "Because of the serious nature of the remaining violations," the Board of Governors affirmed the penalties. (R. 514.)

Sartain then appealed to the Commission pursuant to what was then Section 15A(g) of the Securities Exchange Act, 15 U.S.C. § 78o–3(g), now § 19(d), 15 U.S.C. § 78s(d). After briefs, oral argument, and what it characterized as "a careful review of the record,"[2] the Commission issued its decision on July 7, 1976. It upheld all of the Board of Governors' findings except its finding of a violation with respect to securing a dividend for a favored customer, and also upheld the NASD's sanctions.

### III. Substantial Evidence Supports the Commission's Findings.

The Commission held Sartain personally responsible for the violations on two grounds, that he either (1) directed Securities' activities giving rise to violations or (2) in light of his actual knowledge, access to information, and authority over Securities, he failed to direct it to stop engaging in the improper practices.

On appeal, Sartain raises three objections to the Commission's findings. He asserts that the evidence does not support the Commission's finding that Real Estate and Securities were in fact under common control. He asserts that the evidence does not support the Commission's finding that he directed or could have directed Securities so that it is fair to hold him personally responsible for the three violations. He asserts that in making the just challenged findings, the Commission erred by applying a preponderance of the evidence standard instead of requiring clear and convincing proof.

### A. The Burden of Proof.

In arguing that the Commission should have required clear and convincing proof, Sartain relies upon *Collins Securities Corporation v. Securities and Exchange Commission,* 1977, 183 U.S.App.D.C. 301, 562 F.2d 820. *Collins* held that in a fraud case in which the Commission permanently barred a broker-dealer from the industry almost exclusively on the basis of inferences drawn from the evidence, rather than on direct evidence, the Commission should have used the clear and convincing standard. 562 F.2d at 822–26.

■ Here, too, the Commission has effectively barred Sartain from the industry. But even if we assume (we do not decide) that the severity of Sartain's penalty by itself required the Commission to demand clear and convincing proof, we cannot grant Sartain relief because he failed to raise the issue in a timely fashion. Section 25(c)(1) of the Act, 15 U.S.C. § 78y(c)(1), provides that

> no objection to an order or rule of the Commission for which review is sought under this section, may be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to do so.

Here, Sartain did not object to the Commission's use of the preponderance of the evidence standard while the case was before the Commission.

There is some merit in Sartain's contention that there was reasonable ground for his failure to raise the issue in that he could not have known for sure which burden the Commission would impose before reading the Commission's decision. However, under the Commission's Rules of Practice, a party in Sartain's position can urge his objection before the Commission by filing a timely petition for rehearing. See 17 CFR § 201.-21(e). We need not decide whether 15 U.S.C. § 78y(c)(1) requires one in Sartain's position to demonstrate a reasonable ground for failing to petition the Commission for rehearing, because in this case Sar-

---

2. Under what is now Section 19(e) of the Securities Exchange Act, 15 U.S.C. § 78s(e), the Commission reviews the facts *de novo.*

tain did petition the Commission for a rehearing but did not raise the issue of the burden of proof. He provides no explanation for his failure to raise the issue in his petition for rehearing, and so the contention is not properly before us. *Pennaluna & Company v. Securities and Exchange Commission,* 9 Cir., 1969, 410 F.2d 861, 870; *Gearhart & Otis, Inc. v. Securities and Exchange Commission,* 1965, 121 U.S.App.D.C. 186, 348 F.2d 798, 801; *Lile v. Securities and Exchange Commission,* 9 Cir., 1963, 324 F.2d 772, 773.

**B.** *The Scope of Review.*

■ Under 15 U.S.C. § 78y(a)(4) we cannot overturn the Commission's findings of fact unless convinced that they are not supported by substantial evidence. *Pierce v. Securities and Exchange Commission,* 9 Cir., 1956, 239 F.2d 160, 162.

**C.** *Common Control.*

■ Substantial evidence supports the Commission's finding that Securities and Real Estate were under the common control of Planning Associates within the meaning of NASD Section 13. That Section does not itself define control. In light of its prophylactic purposes, we approve the Commission's adoption of the broad definitions of "control" set forth in *Armstrong, Jones & Co. v. Securities and Exchange Commission,* 6 Cir., 1970, 421 F.2d 359, 362.

*Armstrong* involved an expulsion from the NASD based in part upon violations of Securities and Exchange Act Rule 15c1–5 (see 17 CFR § 240.15c1–5) promulgated pursuant to Section 15(c)(1) of the Securities Exchange Act, 15 U.S.C. § 78*o* (c)(1), a disclosure provision almost identical to NASD Section 13. *Armstrong* adopted two definitions developed by the Commission for use in analogous situations. It first cited Securities and Exchange Act Rule 12(b)–2(f), 17 CFR § 240.12b–2(f) concerning registration statement disclosures which states that

The term "control" (including the terms "controlling," "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person,

whether through the ownership of voting securities, by contract, or otherwise. It then cited *J. P. Morgan & Co.,* 1941, 10 S.E.C. 119, 136, for the proposition that "common control exists whenever both corporations are controlled by individuals united by several factors tending to create and maintain community of interest among them." 421 F.2d at 362.

In *Pennaluna & Company v. Securities and Exchange Commission, supra,* we employed a similarly practical approach in determining whether one Magnuson was in control of a corporation. Eschewing "artificial tests" we held that "it is not necessary that one be an officer, director, manager, or even shareholder to be a controlling person. Further, control may exist although not continuously and actively exercised." 410 F.2d at 866.

■ Under these practical definitions of control, overwhelming evidence supports the Commission's finding of common control. As we have seen, Sartain had important roles in the activities of each of the three entities. In addition, because Planning Associates owned all of the shares of Securities, Planning Associates by any definition had control of Securities. Planning Associates had organized both Securities and Real Estate. Planning Associates' attorney and its accountant joined Sartain as the other two trustees of Real Estate. Like Sartain, the President of Securities was a director and principal shareholder of Planning Associates. Planning Associates acted as Real Estate's real estate broker and, along with wholly owned subsidiaries provided Real Estate with financial support, investment advice, and property management services. While some evidence supports Sartain's contention that the relationships among the entities were purely contractual, under the statutory scheme it is not our role to reweigh that evidence.

**D.** *Sartain's Personal Responsibility.*

The NASD complaint charged that Securities, "acting in its capacity as underwriter for [Real Estate] and directed in such capacity by respondents James D. Lang, Jr., Michael G. Tanzer, and Thomas A. Sartain

engaged in a course of conduct" which included the three violations ultimately sustained by the Commission. Sartain correctly argues that under those pleadings the Commission had to show that Sartain shared in the responsibility for the overall pattern of Securities abuses, and not just that some of the transactions that Sartain himself executed as a registered representative violated the NASD rules. Sartain argues that the Commission failed to make any express finding that Sartain did have any kind of directional control over Securities, and that even if the Commission had made such a finding, it would not be supported by substantial evidence.

The Commission's own Rules of Practice provide that initial decisions "shall include: Findings and conclusions, with the reasons or bases therefor, upon all the material issues of fact, law or discretion presented on the record. . . ." 17 CFR § 201.-16(a). While that provision may not be technically applicable to this proceeding in that the Commission here directly reviewed a decision of the NASD Board of Governors rather than an initial decision by a Commission hearing examiner, it is important that the Commission make its necessary findings explicit. Such written findings help the Commission by assuring that it in fact considers all of the subsidiary questions necessary to a decision, and help the appellate courts by providing insights into the Commission's bases for its decisions.

■ We are concerned that the Commission's decision in this case did not explicitly state that Sartain shared responsibility for the overall pattern of Securities misconduct. Nevertheless, we decline to reverse on this ground because we find this premise implicit in the written decisions of the Commission and the NASD Board of Governors. Both rely upon the District Conduct Committee's statement that in its assessment of penalty that Committee had "taken note of the dominant role of Thomas A. Sartain with regard to the activities [of Securities] described in this cause of action." (R. 351.) The Commission's otherwise thorough discussion of Sartain's contentions helps convince us that the failure to make the finding explicit does not suggest that the Com-

mission might have failed to focus specifically upon the gravamen of the complaint.

■ Reaching the merits, we note that Sartain concedes that Securities did not disclose the interrelationships we have held amounted to common control, did not disclose the cross trading, and failed to comply with the Section 12 notification requirement. We conclude that substantial evidence supports the Commission's finding that Sartain played a sufficiently important role in the affairs of Planning Associates, Securities, and Real Estate to warrant holding him personally responsible for the Securities pattern of NASD rule violations. Sartain emphasizes that his only *formal* connection with Securities was as one of Securities' 52 registered representatives working below 15 registered principals. This argument overlooks the fact that, as a principal shareholder, director, and president of Securities' parent company, Sartain had influence quite different from that of a registered representative hired off the street.

In addition, as a registered representative for Securities, Sartain himself handled numerous transactions in which, following the Securities practice, he did not disclose common control, did not disclose cross trading, and did not comply with the Section 12 confirmation requirements. Sartain's personal involvement proves his actual knowledge of the factual basis of the violations.

Direct evidence also suggests that Sartain had a role in the development of Securities' procedures. In late 1972, a California Department of Corporations inspection of those procedures turned up deficiencies which included failures to confirm transactions and a failure to provide adequate guidelines for the activities of the staff. When attorneys for Securities sent a letter to the Corporations Department's examiners proposing to adopt certain changes in response to the inspection, the attorneys sent Sartain a copy of that letter. (R. 73.) This correspondence suggests that Sartain actually involved himself in the establishment of Securities procedures or at least that he could have put an end to the failures to disclose, had he wished to.

**1374**

## IV. The Sanctions.

The Commission concedes that the sanction imposed amounts to a lifetime expulsion of Sartain from the industry. He contends his penalty amounts to an arbitrary and capricious abuse of Commission discretion. He points out that the District Conduct Committee which originally imposed that penalty had found him responsible not only for the three violations ultimately sustained by the Commission but also responsible for willful fraud under NASD Section 18 and for an allegedly improper short term transaction designed to secure a dividend for a favored customer. He argues that, because the NASD Board of Governors set aside the willful fraud finding and the Commission set aside the findings of violation in connection with the favored customer transaction, the NASD Board of Governors and the Commission were each obliged to reduce the original penalty. This does not follow.

We uphold the sanctions because, in light of the seriousness of the violations ultimately sustained, neither the NASD Board of Governors nor the Commission abused the discretion inherent in their respective standards of review. Within the NASD disciplinary process, Section 16(b) of the NASD's Code of Procedures for Handling Trade Practice Complaints provides that

> if the Board of Governors . . . finds that any disciplinary action taken by such District Conduct Committee against any member is inadequate, excessive, or oppressive, the Board of Governors shall, in writing, increase, reduce, modify or cancel such disciplinary action. CCH NASD Manual ¶ 3015.

Because the Board has the power to increase the sanctions imposed for a given violation, it certainly has the power to leave a sanction undisputed when it sets aside only one of several findings of violation. Here, the NASD Board of Governors specifically answered Sartain's argument when it stated:

> We believe that a sufficient basis exists to affirm the penalties previously imposed upon the respondents because of the serious nature of the remaining violations of the Association's rules.

In reviewing the penalty imposed by the NASD Board of Governors the Commission's role was to decide whether the penalty was "excessive or oppressive, having due regard to the public interest." Section 15A(h) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o–3(h)(2), now § 19(e), 15 U.S.C. 78s(e). The Commission specifically answered Sartain's argument when it stated:

> We are unable to conclude that the sanctions imposed by the NASD are excessive or oppressive. It is true that we have set aside certain of the NASD's findings of violation. But, in light of applicants' remaining misconduct, we do not consider that any reduction in penalties is warranted. Here the disclosure made by applicants to purchasers of NREF securities was seriously deficient. Customers were not told that the selling broker-dealer and the issuer were under common control, that customers were not getting original issue shares with proceeds going to the issuer, and that, in some cases, they were buying the stock of insiders, including applicants who were disposing of their shares. Under the circumstances, we are not inclined to be lenient.

On this record we can hardly say that the Commission abused its discretion in that its remedy is "unwarranted in law or is without justification in fact [so that] a court [should] attempt to intervene in the matter." *American Power & Light Co. v. Securities and Exchange Commission,* 1946, 329 U.S. 90, 112–13, 67 S.Ct. 133, 146, 91 L.Ed. 103. *Accord, Butz v. Glover Livestock Commission Co., Inc.,* 1973, 411 U.S. 182, 185–86, 187, 188, 93 S.Ct. 1455, 36 L.Ed.2d 142. *See also, General Securities Corp. v. Securities and Exchange Commission,* 9 Cir., 1978, 583 F.2d 1108, 1110.

Sartain also argues that his penalty is invalid because the Commission imposed more severe sanctions on him than on his business associates and/or because the Commission failed to make specific findings

to justify the disparity.[3] This contention is without merit. The Commission's opinion fully describes how Sartain was deeply involved in the affairs of all three companies. His associates were not. In any event, absent discrimination based upon an invidious classification or in retaliation for a petitioner's assertion of his federal rights,

> The employment of a sanction within the authority of an administrative agency is . . . not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases.

*Butz v. Glover Livestock, supra,* 411 U.S. at 187, 188, 93 S.Ct. at 1459, and cases cited therein. *Accord, General Securities Corp. v. Securities and Exchange Commission,* 9 Cir., 1978, 583 F.2d 1108, 1110.

### V. *Due Process.*

Sartain, Securities and two of Sartain's business associates shared the same counsel before the District Conduct Committee and the NASD Board of Governors. Only Sartain and Lang, the president of Securities, appealed to the Commission. They together retained a second attorney to bring that appeal. As discussed above, Sartain received a more severe penalty than his two business associates. Represented by independent counsel for the first time on this appeal, Sartain contends that the joint representation denied him effective assistance of counsel and his due process rights to a fair hearing because joint counsel was not in a position to try to shift the blame from Sartain to his business associates in hopes of reducing the severity of the sanctions against him.

■ As discussed in Section III, *supra,* 15 U.S.C. § 78y(c)(1) bars a petitioner from raising new claims on appeal, unless the petitioner can demonstrate a reasonable ground for his failure to raise the claims

below. Sartain claims that his joint counsel improperly continued to represent him after allegedly critical conflicts had developed. It is not surprising that counsel below did not raise this claim, for to do so would have involved challenging the propriety of their own conduct. Therefore Sartain's failure to raise the claim below is excusable.

■ Nonetheless, the claim has no merit. We emphasize that this is a civil, not a criminal proceeding. Since Sartain stood to lose the valuable "privilege of being employed in the securities industry," *Hanly v. Securities and Exchange Commission,* 2 Cir., 1969, 415 F.2d 589, 595, due process unquestionably did entitle him to a fair hearing. *See, e.g., Goldberg v. Kelly,* 1970 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287; *Hannah v. Larche,* 1960, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307. Section 555(b) of the Administrative Procedure Act, 5 U.S.C. § 555(b), and due process assured Sartain the right to retain independent counsel and to have that counsel represent him before the Commission. *United States v. Weiner,* 9 Cir., 1978, 578 F.2d 757, 773.

■ However, just as the Commission was not obliged to provide him with counsel, *Nees v. Securities and Exchange Commission,* 9 Cir., 1969, 414 F.2d 211, 221, the Commission was not obligated to assure that the counsel he retained provided him with "reasonably competent and effective representation" within the meaning of criminal cases such as *Cooper v. Fitzharris,* 9 Cir., (*in banc*), 1978, 586 F.2d 1325, 1327.

■ While we do not hold that there could never be a case in which irreconcilable conflicts within a joint representation would be so prejudicial as to effectively deny a broker his right to a fair hearing, this is not such a case. Sartain has failed to convince us[4] that his joint representation

---

**3.** James D. Lang, Jr., President of Securities, was censured, fined $5,000, and suspended from association with any NASD member for six months. Michael G. Tanzer, Executive Vice President of Securities was censured and fined $500.

**4.** This court has long held that in a criminal case, the defendant has the burden of establishing that the joint representation in fact created an actual conflict of interest and prejudiced his or her defense. *See, e.g., United States v. Kutas,* 9 Cir., 1976, 542 F.2d 527, 529; *United*

with Lang actually prejudiced the presentation of his appeal to the Commission. Since the Commission relied primarily upon Sartain's failure to correct improper procedures of Securities rather than upon his alleged involvement in their establishment, to establish more clearly that Lang created the procedures would not have relieved Sartain of his overall responsibility for the direction of Securities. Moreover, some evidence in the record suggests that the decision to rely upon joint counsel may well have been a deliberate, strategic choice designed to minimize finger pointing among the respondents. This makes us even less inclined to enable Sartain to have it both ways, since the "right to have an independent counsel can . . . be waived." *United States v. Weiner,* 9 Cir., 1978, 578 F.2d 757, 774. *See also, United States v. Kutas,* 9 Cir., 1976, 542 F.2d 527, 530; *United States v. Frame,* 9 Cir., 1972, 454 F.2d 1136, 1138; *Kaplan v. United States,* 9 Cir., 1967, 375 F.2d 895, 897–98.

The order of the Commission is affirmed. The petition for review is denied. The motion for judicial notice of adjudicative facts is denied.

*States v. Frame,* 9 Cir., 1972, 454 F.2d 1136, 1138; *United States v. Nystrom,* 9 Cir., 1971, 447 F.2d 1350, 1351; *Davidson v. Cupp,* 9 Cir., 1971, 446 F.2d 642, 643. *A fortiori* this would be the rule for any claim recognized in a civil case.