**CALMAT COMPANY, Petitioner,**

v.

**U.S. DEPARTMENT OF LABOR, Administrative Review Board; Robert E. Germann, Respondents.**

No. 02–73199.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 2004.

Filed April 19, 2004.

Michael W. Monk, Musick, Peeler & Garrett, Los Angeles, CA, for the petitioner.

Lee Grabel, U.S. Department of Labor, Washington, D.C., for the respondent.

Before B. FLETCHER, PREGERSON, and FERGUSON, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge:

CalMat Company ("CalMat") petitions for review of a Final Decision and Order of the Department of Labor's Administrative Review Board (ARB), holding that CalMat violated the whistleblower protection provision of the Surface Transportation Assistance Act (STAA), 49 U.S.C. § 31105, when it suspended Robert E. Germann without pay. We have jurisdiction under 49 U.S.C. § 31105(c), and we deny the petition for review.

## I. BACKGROUND

After working nearly twenty years for CalMat, Germann was elected the local union shop steward in 1996. On April 25, 1998, a fellow employee told Germann that three drivers had worked for more than fifteen hours the previous day, in violation of California and federal safety regulations. Germann checked the employees' time cards and verified that each had worked for more than eighteen hours on April 24, 1998.

Concerned for their safety, Germann spoke with all three employees to ensure that they knew that it is illegal to drive for more than fifteen hours in one day and to encourage them not to do so, even if pressured by supervisors. Germann's discussions with one of these workers, Tony Contreras, became heated. Additionally, Germann contacted the California Highway Patrol (CHP), reported the violations, offered to file a formal complaint, and discussed having someone from CHP do a presentation to educate CalMat drivers about the safety regulations. Finally, Germann talked to several CalMat managers about the over-hours violations. On April 29, 1998, Germann informed Benny White, CalMat's transportation manager, that he had reported the safety violations to CHP.

On April 30, 1998, White spoke with Contreras about Germann's safety complaint. Contreras told White that he had worked over hours voluntarily. Additionally, Contreras told White that Germann was harassing him about the over-hours violation, and that Germann had called him a "Chihuahua," which Contreras regards as an ethnic slur, as well as a "son of a bitch" and a "motherfucker." The next day, May 1, 1998, White informed Germann that he was suspended without pay, pending investigation of threats and harassment that Germann allegedly made to a then-unnamed fellow employee.

Jeff Dyer, CalMat's Director of Labor Relations, investigated Contreras's complaint against Germann, and Dyer's investigation evolved to include the issue of whether Germann had encouraged CalMat employees to slow down their work. On May 22, 1998, CalMat issued Germann a written notice officially converting his suspension into a disciplinary suspension without pay for using an ethnic slur and

obscene language, and for encouraging a work slowdown. Germann returned to work,[1] but CalMat terminated his employment on November 19, 1998.[2]

■ Meanwhile, on May 15, 1998, Germann filed a complaint with the Occupational Safety and Health Administration of the Department of Labor, alleging that he was suspended in retaliation for making safety complaints in violation of the STAA's whistleblower protection provisions. Under the STAA, employers in the commercial motor transportation industry may not discipline or discriminate against an employee in retaliation for filing complaints alleging a violation of a commercial motor vehicle safety regulation, standard, or order. 49 U.S.C. § 31105(a). Lodging complaints within a company is protected under the STAA. *Clean Harbors Envtl. Servs. v. Herman,* 146 F.3d 12, 19–21 (1st Cir.1998); *Yellow Freight Sys., Inc. v. Reich,* 8 F.3d 980, 986 (4th Cir.1993).[3] After the Department of Labor issued initial findings that CalMat had not violated the STAA, Germann requested a hearing before an Administrative Law Judge (ALJ) pursuant to 49 U.S.C. § 31105(b)(2)(B). The hearing was held February 22 to February 26, 1999.

On August 6, 1999, the ALJ issued a Recommended Decision and Order (RDO) concluding that CalMat had violated the STAA when it suspended Germann. More specifically, the ALJ found that CalMat's reasons for suspending Germann were pretext for retaliation. In the alternative, using mixed-motive analysis, the ALJ held that, if CalMat was motivated in part by the legitimate motive of disciplining Germann for harassing Contreras, the company would not have suspended Germann if not for his protected activities.

CalMat appealed the ALJ's decision to the ARB, arguing (1) the ALJ incorrectly applied the standard for burdens of proof; (2) the ALJ committed prejudicial error by admitting and relying upon hearsay evidence; and (3) the ALJ should have deferred to the outcome of a grievance arbitration that concluded that CalMat had disciplined Germann with just cause. The ARB concluded that the ALJ correctly applied the burden of proof and affirmed on the basis of pretext. Additionally, the ARB held that the ALJ did not commit prejudicial error in admitting hearsay evidence and correctly declined to defer to the outcome of Germann's grievance arbitration. CalMat timely petitioned for review, advancing the same arguments.

## II. STANDARDS OF REVIEW

■ We review ARB's decision in an STAA whistleblower case in accordance with the Administrative Procedure Act, under which the ARB's legal conclusions must be sustained unless they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and its findings of fact must be sustained unless they are unsupported by substantial evidence in the record as a whole. *See* 5 U.S.C. § 706(2); *Brink's, Inc. v. Herman,* 148 F.3d 175, 178 (2d Cir.1998); *see also W. Truck Manpower, Inc. v. U.S. Dep't of Labor,* 12 F.3d 151, 153 (9th Cir.1993). We review the decision of the ARB rather than the ALJ, but the ARB is required to consider conclusive the ALJ's factual find-

---

1. Germann's suspension is referred to both as 22 days and thirty days in the record, so it is unclear precisely when he returned to work.

2. Germann filed a separate STAA retaliation claim for his termination, but his termination is not part of this case.

3. This *Yellow Freight* case is unrelated to the *Yellow Freight* case cited on page 1126.

ings if supported by substantial evidence. *Castle Coal & Oil Co. v. Reich,* 55 F.3d 41, 44 (2d Cir.1995); 29 C.F.R. § 1978.109(c)(3).

■■■ With respect to CalMat's hearsay objections, interpretation of the hearsay rule is a question of law reviewed de novo. *United States v. Bao,* 189 F.3d 860, 863 (9th Cir.1999). We review the decision to admit or exclude evidence as hearsay for abuse of discretion. *Ostad v. Oregon Health Sci. Univ.,* 327 F.3d 876, 885 (9th Cir.2003). We must conclude both that the ARB abused its discretion and that the error was prejudicial to reverse on the basis of an evidentiary ruling. *McEuin v. Crown Equip. Corp.,* 328 F.3d 1028, 1032 (9th Cir.2003).

## III. DISCUSSION

### A. *Burden of Proof for Showing Retaliation*

CalMat contends that the ALJ erred in applying mixed-motive analysis to this case because Germann presented no direct evidence that CalMat suspended Germann in retaliation for his safety complaints, and the ARB abused its discretion by affirming the ALJ despite this error. CalMat's argument fails for two reasons. First, Germann need not produce direct evidence to prove retaliation under either the pretext or mixed-motive framework. Furthermore, since our review is of the ARB's decision and the ARB affirmed solely on the ALJ's holding of pretext, we affirm on that basis.

■■■ STAA plaintiffs' proof of unlawful retaliation is established using the same framework used to prove discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2. *Clean Harbors,* 146 F.3d at 21; *Yellow Freight,* 8 F.3d at 983. Adapting Title VII's *McDonnell Douglas* test to the STAA, the plaintiff has the initial burden of establishing a prima facie case by raising an inference

that protected activity was likely the reason for the adverse employment action. *Moon v. Transp. Drivers, Inc.,* 836 F.2d 226, 229 (6th Cir.1987). Once the plaintiff has established a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment decision. *Clean Harbors,* 146 F.3d at 21; *Moon,* 836 F.2d at 229. If the defendant advances reasons to rebut the inference of retaliation, the plaintiff bears the ultimate burden of demonstrating by a preponderance of the evidence that the reasons articulated were pretext for retaliation. *Clean Harbors,* 146 F.3d at 21; *Moon,* 836 F.2d at 229.

The ALJ held that Germann proved retaliation in violation of the STAA under a pretext theory or, in the alternative, under a mixed-motive theory. As to pretext, the ALJ held that Germann made out a prima facie case of retaliation, CalMat rebutted it with evidence that it disciplined Germann for a legitimate reason, but Germann showed by a preponderance of the evidence that CalMat's articulated reason for the suspension was pretext for retaliation.

■■■ The ALJ made various findings to support the conclusion that CalMat was motivated by a desire to retaliate against Germann for making safety complaints, including: Germann was suspended a few days after voicing safety complaints; Contreras's complaint against Germann emerged during investigation of Germann's safety complaints; suspending a long-time employee without pay pending investigation is an unusually severe reaction to Contreras's complaint; the length of Germann's suspension was severe beyond the criteria of the company's progressive disciplinary standards; and CalMat treated similar complaints involving racial slurs or sexual harassment less seriously.

Additionally, the ALJ discounted Dyer's credibility. The ALJ noted that she had "reservations as to the manner in which Dyer conducted ... the investigation." The ALJ found suspicious Dyer's failure to investigate a contemporaneous sexual harassment claim against Contreras; Dyer's refusal to halt his investigation when he received a letter on May 12, 1998, from both Germann and Contreras stating that they had resolved their differences; and Dyer's inability to provide documentation or details for his allegation that Germann encouraged the workers to engage in a work slowdown.

We review the ARB's decision sustaining the ALJ's pretext holding. *See Castle Coal,* 55 F.3d at 44. Any error the ARB committed by rejecting the ALJ's mixed-motive analysis was harmless because the ARB affirmed on the basis of the ALJ's alternate holding that CalMat's articulated reason for suspending Germann was a pretext for retaliation in violation of the STAA.[4] We further conclude that the ARB's decision to affirm on the basis of pretext is supported by substantial evidence, including the timing and severity of Germann's suspension and evidence of disparate treatment. We conclude that the ARB's decision is not arbitrary, capricious, or otherwise not in accordance with law. *See Clean Harbors,* 146 F.3d at 19.

## B. *Hearsay Objections*

STAA administrative hearings are conducted in accordance with the Rules of

Practice and Procedure for Administrative Hearings. *See* 29 C.F.R. § 1978.106(a) (citing 29 C.F.R. § 18). Under these rules, which conform to the Federal Rules of Evidence, hearsay statements are inadmissible unless they are defined as non-hearsay or fall within an exception to the hearsay rule. 29 C.F.R. § 18.802.[5] "Hearsay" is a statement, other than one made by the declarant while testifying at the hearing, offered in evidence to prove the truth of the matter asserted by the out-of-court declarant. 29 C.F.R. § 18.801(c).

CalMat argues that the ALJ admitted and relied upon hearsay evidence from three key witnesses, Robert Sengle, Allen Buckley, and Jeffrey Winkler, despite CalMat's timely objections. It argues that these errors substantially prejudiced CalMat. Furthermore, CalMat contends that the ARB abused its discretion by holding that any hearsay the ALJ improperly admitted constituted harmless error. CalMat's argument fails because much of the testimony to which they object is not hearsay, and any hearsay admitted in error did not prejudice CalMat.

### 1. *Testimony of Robert Sengle*

CalMat contends that the ALJ erred in admitting hearsay testimony from Robert Sengle. Sengle testified that a fellow employee, D. Lewis, called him a "white bald-headed m.f." and threatened to "take [Sengle] outside and kick [his]—."[6] Sengle testified that he reported the incident to supervisors, and a supervisor told him that

---

4. The ARB, like CalMat, erroneously stated that direct evidence of retaliation is necessary to apply the mixed-motive framework. *See Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 2150–54, 156 L.Ed.2d 84 (2003) (holding that Title VII plaintiffs may prove discrimination in mixed-motive cases by direct or circumstantial evidence).

5. During the hearing, the ALJ believed that formal rules of evidence do not apply to STAA

hearings because they do not apply in administrative hearings for whistleblower complaints under other statutes. However, her decision states that she was "mindful to screen out objected to evidence admitted based on this error."

6. The alterations appear in the hearing transcript.

Lewis was disciplined, but not how. Sengle stated that he did not know if Lewis was suspended, but he observed that Lewis did not miss any work after the incident. Lewis testified at the hearing that a supervisor spoke to him about the confrontation, but he was not disciplined.

 The only possible hearsay was Sengle's statement that a supervisor told him that Lewis was disciplined for the confrontation. However, this statement favors CalMat. Sengle's testimony about what Lewis said to him was not offered to establish the truth of the matter asserted, for example that Sengle is indeed bald, but was offered as evidence that other incidents involving racially-offensive speech occurred at CalMat. If the significance of an out-of-court statement lies in the fact that the statement was made and not in the truth of the matter asserted, then the statement is not hearsay. *Kunz v. Utah Power & Light Co.*, 913 F.2d 599, 605 (9th Cir.1990); *United States v. Kutas*, 542 F.2d 527, 528 (9th Cir.1976); *Martinez v. McCaughtry*, 951 F.2d 130, 133 (7th Cir. 1991).

Similarly, Sengle's testimony that he reported the incident to supervisors is not hearsay because he was testifying from his personal knowledge. Furthermore, the testimony was not admitted to prove the truth of Sengle's out-of-court statement to supervisors, but as evidence that CalMat supervisors were aware that Lewis threatened him and made racially-offensive comments. *See United States v. Castro*, 887 F.2d 988, 1000 (9th Cir.1989) (holding that statements introduced to show that a party had certain information, rather than for the truth of the information, are not hearsay); *Gibbs v. State Farm Mut. Ins. Co.*, 544 F.2d 423, 428 (9th Cir.1976) (holding that statements were not hearsay if admitted to show that the defendant had received certain information); *Kutas*, 542 F.2d at 528. Furthermore, Sengle's testi-

mony that he does not know if Lewis was suspended but he observed that Lewis did not miss work after the incident is not hearsay, but rather Sengle's personal observation.

### 2. Testimony of Allen Buckley

 CalMat argues that the ALJ erred in admitting the testimony of Allen Buckley that a supervisor told Buckley, "I'm tired of your shit nigger and I'm going to give you a pink slip." Buckley stated that he reported the incident to a union shop steward, who reported it to others. Buckley testified that he was not aware if his supervisor received any punishment, but that CalMat reinstated Buckley's employment. As with Sengle's testimony, the out-of-court statements to which Buckley testified are not hearsay because they were not admitted to prove the truth of the matter asserted. Rather, Buckley's statements were admitted to show that other CalMat employees made racially-offensive statements, and the incidents were reported to CalMat. The ARB properly concluded that Buckley's statements were not hearsay.

### 3. Testimony of Jeffrey Winkler

CalMat contends that the ALJ erred in admitting hearsay testimony from Jeffrey Winkler. Winkler testified that Germann's suspension was discussed at a meeting, and Dennis Bowman stated that CalMat was "going to get rid of all the troublemakers." Additionally, Winkler testified that Bowman stated, "Reggie [Germann] brought it on himself."

 Winkler's testimony that Bowman stated that Germann "brought it on himself" is not hearsay because it is not admitted to establish the truth of the matter asserted, that Germann deserved discipline. However, Winkler's testimony that Bowman stated that CalMat was ridding

itself of troublemakers may have been inadmissible hearsay, admitted to establish that CalMat wished to remove Germann because his safety complaints rendered him a troublemaker.[7] Assuming the ALJ erred by admitting this statement, the error was not prejudicial because the ALJ explicitly stated that she gave no weight to Winkler's testimony, and there is ample evidence of pretext in the record.

### 4. Conclusion

Because the ALJ rather than a jury weighed the evidence, prejudice is less likely because a judge is presumed to have disregarded the inadmissible and relied on the competent evidence. *See Plummer v. W. Int'l Hotels Co.*, 656 F.2d 502, 505 (9th Cir.1981) (quoting McCormick on Evidence § 60, at 137 (2d ed.1972)). In fact, here the ALJ specifically stated that she did not rely on hearsay evidence that she had admitted over CalMat's objections. As the ALJ noted, there was corroborating evidence about several incidents of racial or sexual harassment that adequately support her finding of disparate treatment. In particular, the ALJ relied heavily on CalMat's failure to investigate a contemporaneous sexual harassment complaint against Contreras, and CalMat offers no argument that the testimony about this complaint should not have been admitted. Therefore, we affirm the ARB's determination that any evidence admitted in error did not prejudice CalMat.

### C. *Germann's Grievance Arbitration*

In addition to his STAA complaint, Germann filed a grievance through his union arguing unsuccessfully that CalMat suspended him and then terminated his employment without just cause in violation of the union's and CalMat's collective bargaining agreement (CBA). CalMat contends that the ALJ should have deferred to the outcome of the arbitration because it dealt with the same factual issues, was fair and regular, and was consistent with the purpose of the STAA. CalMat further argues that the ARB abused its discretion by affirming the ALJ's decision not to defer to the arbitration.

■■■ The arbitration panel concluded that CalMat had just cause under the CBA to suspend Germann and terminate his employment because he encouraged a work slowdown. The arbitration panel included a representative of CalMat who concluded that the company did not violate the CBA, a union representative who concluded that CalMat did violate the CBA, and a neutral chairman who cast the tie-breaking vote for CalMat. Although the union argued that CalMat retaliated against Germann for making safety complaints, the chairman concluded that his consideration was limited to the "four corners of the labor agreement," under which the only relevant issue was whether "the grievant [Germann] engaged in stopping the employers [sic] work for any reason." The arbitration panel did not address the protections provided by the STAA, and the panel chairman dismissed the union's retaliation argument as an effort "to inject other non related[sic] evidence into the picture."

The ALJ concluded that she should not defer to the arbitration because the legal issues in the two proceedings differed significantly and the arbitration did not address adequately all of the factual issues important to the STAA proceeding. The ARB, in affirming the ALJ's decision, not-

---

7. It appears that Bowman may have been a CalMat supervisor, and it is possible that the statement would be defined as non-hearsay as an admission of a party opponent. Because we conclude that the statement did not prejudice CalMat, we need not resolve definitively whether the statement is hearsay.

ed that the arbitration did not address the employee protections provided by the STAA.

We agree with the ARB that the ALJ's decision not to defer to the outcome of Germann's grievance arbitration was appropriate because the arbitration did not protect his rights under the STAA. The applicable regulations make clear that deferral to arbitration under a CBA in an STAA proceeding is appropriate only in narrow circumstances. In fact, CalMat cites no case in which a court held the decision not to defer to an arbitration proceeding in an STAA case to be an abuse of discretion. *But see Yellow Freight,* 8 F.3d at 983 n. 1 (affirming the decision not to defer to a grievance arbitration); *Yellow Freight Sys., Inc. v. Martin,* 983 F.2d 1195, 1198–1200 (2d Cir.1993) (same).[8]

STAA regulations protect employees' right to pursue both an STAA claim and a grievance arbitration under a CBA. STAA regulations provide that an "employee who files a complaint under section 405 of the Act [the STAA whistleblower protection provision] may also pursue remedies under grievance arbitration proceedings in collective bargaining agreements." 29 C.F.R. § 1978.112(a)(1). "The Secretary [of Labor's delegates] may proceed with the investigation and the issuance of findings and orders regardless of the pendency of other proceedings." *Id.*

However, "the Secretary may, in his or her discretion, postpone a determination ... and defer to the results of such proceedings." 29 C.F.R. § 1978.112(a)(3). Deferring to a grievance arbitration is appropriate only in narrow circumstances:

When a complaint [under the STAA] is under investigation ... postponement of determination would be justified where the rights asserted in other proceedings

are substantially the same as rights under section 405 and those proceedings are not likely to violate rights guaranteed by section 405. The factual issues in such proceedings must be substantially the same as those raised by a section 405 complaint, and the forum hearing the matter must have the power to determine the ultimate issue of discrimination.... Before the Assistant Secretary or the Secretary defers to the results of other proceedings, it must be clear that those proceedings dealt adequately with all factual issues, that the proceedings were fair, regular, and free of procedural infirmities, and that the outcome of the proceedings was not repugnant to the purpose and policy of the Act.

29 C.F.R. § 1978.112.

The Department of Labor's policy of deferring STAA claims to the outcome of an arbitration under a CBA only in narrow circumstances is consistent with the national policy favoring arbitration. "While courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." *Barrentine v. Arkansas–Best Freight Sys.,* 450 U.S. 728, 737, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (holding that courts should not give preclusive effect to a grievance arbitration in a suit under the Fair Labor Standards Act); *see also McDonald v. City of West Branch,* 466 U.S. 284, 290–91, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (holding that courts should not give preclusive effect to a CBA arbitration in a civil rights suit under 42 U.S.C. § 1983); *Alex-*

---

**8.** The ALJ properly admitted and weighed as evidence the record from the arbitration. *See Roadway Express v. Brock,* 830 F.2d 179, 180–

82 (11th Cir.1987) (holding that related grievance arbitration proceedings should be considered as evidence in an STAA case).

*ander v. Gardner–Denver Co.,* 415 U.S. 36, 59–60, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (holding that courts should not give preclusive effect to a CBA arbitration in a suit under Title VII).[9]

Importantly, in this case, the arbitrators did not have "the power to determine the ultimate issue of discrimination" as required for the ALJ to defer to the outcome of the arbitration. *See* 29 C.F.R. § 1978.112(b). A labor arbitrator's "source of authority is the collective-bargaining agreement, and he must interpret and apply that agreement.... The arbitrator, however, has no general authority to invoke public laws that conflict with the bargain between the parties." *Gardner– Denver,* 415 U.S. at 53, 94 S.Ct. 1011. As the arbitration panel member who cast the deciding vote stated, his decision was limited to the "four corners of the labor agreement." The rights Germann asserted under his CBA are distinct from the rights he asserted under the STAA, and the arbitrators did not consider the protections offered by the STAA. Therefore, we conclude that the ARB did not abuse its discretion in holding that the ALJ properly refused to defer to the outcome of Germann's grievance arbitration.

## IV. CONCLUSION

The ALJ did not err in applying the burdens of proof for demonstrating retaliation in violation of the STAA, and the ARB properly affirmed the ALJ's decision on the basis of pretext. Likewise, the ARB's conclusions that any hearsay evidence admitted in error did not prejudice CalMat and that the ALJ appropriately refused to defer to Germann's grievance arbitration

---

**9.** We do not address whether deferral would be appropriate if the parties had arbitrated an employee's statutory claim under the STAA, as opposed to a claim under a CBA. *See generally EEOC v. Luce, Forward, Hamilton & Scripps,* 345 F.3d 742 (9th Cir.2003) (en banc)

are not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Therefore, CalMat's petition for review is

## DENIED.

(holding that employers may require employees to agree to arbitrate Title VII claims). In this case, the arbitration determined Germann's rights under his union contract, not under the STAA.