NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAY 20 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| LYN MICHAEL GERBER, | No. 14-71731 |
| Petitioner, | NTSB No. EA-5715 |
| v. | |
| NATIONAL TRANSPORTATION SAFETY BOARD and FEDERAL AVIATION ADMINISTRATION, | MEMORANDUM* |
| Respondents. | |

On Petition for Review of an Order of the
National Transportation Safety Board

Submitted May 11, 2016**
San Francisco, California

Before: McKEOWN and FRIEDLAND, Circuit Judges and LEFKOW,*** Senior
District Judge.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Joan H. Lefkow, Senior District Judge for the U.S.
District Court for the Northern District of Illinois, sitting by designation.

Lyn Michael Gerber seeks review of an order of the National Transportation Safety Board (NTSB) upholding a seventy-five day suspension of his airline transport pilot certificate imposed by the Federal Aviation Administration (FAA) for violations of 14 C.F.R. §§ 91.13(a) and 91.405(a). We have jurisdiction under 49 U.S.C. §§ 1153(a), 44709(f), and 46110(a). We affirm.

Our review of an order of the NTSB is conducted in accordance with the Administrative Procedure Act. *Howard v. FAA*, 17 F.3d 1213, 1215 (9th Cir. 1994). Such review is "narrowly circumscribed." *Olsen v. NTSB*, 14 F.3d 471, 474 (9th Cir. 1994) (quoting *Janka v. Dep't of Transp.*, 925 F.2d 1147, 1149 (9th Cir. 1991)). We will disturb the NTSB's decision only if it we find it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Andrzejewski v. FAA*, 563 F.3d 796, 799 (9th Cir. 2009) (quoting 5 U.S.C. § 706(2)(A)).

We review purely legal questions de novo. *Janka*, 925 F.2d at 1149. In contrast, findings of fact are conclusive where they are supported by substantial evidence in the record. 49 U.S.C. §§ 1153(b)(3), 44709(f); *Janka*, 925 F.2d at 1149. The NTSB gives deference to the credibility determinations of its administrative law judge "unless the law judge has made the determinations 'in an arbitrary or capricious manner,'" and this court must defer to them as well. *Lackey v. FAA*, 386 F. App'x 689, 697 (9th Cir. 2010) (quoting *Adm'r v. Nickl*, NTSB

Order No. EA-5287, 2007 WL 1590950, at *2 (May 31, 2007)) (internal quotation marks omitted)). Similarly, we review evidentiary or procedural rulings for abuse of discretion. *See Calmat Co. v. U.S. Dep't. Labor*, 364 F.3d 1117, 1122 (9th Cir. 2004) (citing *Ostad v. Or. Health Sci. Univ.*, 327 F.3d 876, 885 (9th Cir. 2003)); *see also Lackey*, 386 F. App'x at 696. To reverse an NTSB evidentiary or procedural ruling, we must conclude both that the NTSB abused its discretion and that the error was prejudicial to reverse its decision. *See Calmat*, 364 F.3d at 1122.

The NTSB did not err in holding that Gerber violated 14 C.F.R. § 91.405(a), which requires that an owner or operator "shall between required inspections . . . have discrepancies repaired." Substantial evidence in the record supports the NTSB's finding that Gerber knew his aircraft had three open discrepancies and that he failed to have them resolved before operating two flights on February 26, 2012. Prior to the flights, Gerber signed Lear Tucson's "Departure Checklist," initialed a sign-off sheet for the repairs authorized, signed a receipt and invoice showing payment for the repairs performed, and received, among other things, a copy of the Service Order and the "List of Open Discrepancies." These documents make clear that Lear Tucson noted three possible discrepancies which had not been inspected and/or repaired.[1] Based on this evidence, the NTSB's finding that Gerber was

---

[1] Gerber challenges Lear Tucson's finding that his brakes needed to be repaired. The ALJ found Gerber had no reason to question Peter Brake's calibrated test of the brakes where Brake's recollection of the brake pads was credible and Gerber's

aware of the discrepancies is based on substantial evidence in the record. Because § 91.405(a) places a duty on Gerber to resolve the discrepancies, whether Lear Tucson refused to use the brakes Gerber offered or why it refused to make the repairs is irrelevant.

The NTSB did not err in rejecting Gerber's defense of reasonable reliance. Once the FAA has established a prima facie case of a violation, the burden shifts to the respondent to prove his affirmative defense by a preponderance of the evidence. *Adm'r v. Hermance*, NTSB Order No. EA-5706, 2014 WL 1118309 at *3 (Feb. 25, 2014) (citing *Adm'r v. Tsegaye*, NTSB Order No. EA-4205, 1994 WL 324279 at *5–6 (June 23, 1994)). The NTSB's doctrine of reasonable reliance is a narrow one. *Adm'r v. Haddock*, NTSB Order No. EA-5596, 2011 WL 3958427 at *4 (Aug. 29, 2011). A pilot in command (PIC) is generally responsible for the overall safe operation of his aircraft. *Adm'r v. Fay*, NTSB Order No. EA-3501, 1992 WL 40523 at *4 (Feb. 1, 1992). "If, however, [1]

---

was not. Gerber takes issue with the fact that Lear Tucson lost or misplaced the actual readings of the brakes and that Lear Tucson did not produce any documentation to show that the micrometer was in fact calibrated the day Brake measured the brakes. Here, the ALJ noted that the piece of paper with the brake measurements had existed and had since gone missing. Nevertheless, the ALJ found Brake's testimony credible because his testimony was consistent with the statement he wrote just a month or so after his actual measurements, and there had been no showing that Brake could not remember what he did on that particular inspection. The ALJ's credibility determination is neither arbitrary nor capricious.

a particular task is the responsibility of another, [2] the PIC has no independent obligation (e.g., based on operating procedures or manuals) or ability to ascertain the information, and [3] the captain has no reason to question the other's performance, then and only then will no violation be found." *Id.* In determining whether reliance was reasonable, the NTSB considers "'the facts of each case' and 'the entire circumstances' surrounding the alleged violation," *Haddock*, 2011 WL 3958427 at *4 (quoting *Adm'r v. Buboltz*, NTSB Order No. EA-3907, 1993 WL 226110 at *2 (June 7, 1993)), and whether the case involved "specialized, technical expertise where a flight crew member could not be expected to have the necessary knowledge." *Fay*, 1992 WL 40523 at *4.

Substantial evidence in the record supports the NTSB's conclusions that Gerber could not have reasonably relied on statements made to him by Lear Tucson employees or have reasonably relied on the maintenance log entry. As indicated above, Gerber knew about the discrepancies and, as PIC, had an independent obligation to determine whether they were corrected prior to flight.[2] This is not a case involving specialized, technical expertise. Gerber was informed

---

[2] Not only does § 91.405(a) require that, between required inspections, the owner or operator have discrepancies repaired, but § 91.7 states "(a) No person may operate a civil aircraft unless it is in an airworthy condition. (b) The pilot in command of a civil aircraft is responsible for determining whether that aircraft is in condition for safe flight. The pilot in command shall discontinue the flight when unairworthy mechanical, electrical, or structural conditions occur." 14 C.F.R. § 91.7.

that, after conducting a micrometer test, a Lear Tucson technician had determined that the brakes were beyond limits. Having been a pilot for thirty-one years, Gerber knew the risks in landing an aircraft with brakes that were beyond limits. As such, even if Lear Tucson employees made misleading statements about the aircraft's airworthiness or violated § 43.11 by failing to properly record information in the maintenance log entry, such violation would not excuse Gerber from his duty to have the known discrepancies repaired prior to flight.[3] Accordingly, the NTSB did not err.

The NTSB did not err in upholding the ALJ's decision to (1) grant the FAA's motion to quash Gerber's subpoena duces tecum and (2) sustain objections to questions about the accounting used to pay Lear Tucson. There was no error in the NTSB's findings that any FAA investigation into Lear Tucson was irrelevant and that Gerber failed to establish prejudice from exclusion of the evidence. Similarly, Gerber failed to show the relevance of any questioning into the accounting used to pay for the repairs or any resulting prejudice.

**PETITION DENIED.**

---

[3] We also note that Gerber makes inconsistent assertions. Gerber cannot claim that Lear Tucson refused to take his replacement brakes although it had none in stock to repair them and at the same time aver that, based on its employees' words and conduct, he reasonably concluded that the brakes had been repaired.